## JOHN H. THOMAS *vs.* JOHN C. TURNER and CHAS. F. YARDLEY.

The 5th sec. of the Mechanics' Lien Law of 1845, ch. 287, prevents the issuing of a *scire facias* to enforce the lien, in cases where a credit is

given or notes or other securities received, until the expiration of the credit agreed upon.

The defence under this section, that the *scire facias* issued before the expiration of the credit, is as available to any one whose property is sought to be charged, as to the party with whom the contract for the credit is made.

APPEAL from the Superior Court of Baltimore city.

*Scire facias* under the Mechanics' Lien Laws, sued out by the appellees on the 23rd of December 1854, to enforce a claim of $690.10, filed on the 22nd of December 1854, against two houses and lots on McCullough street, in the city of Baltimore, for lumber furnished at different periods, between the 10th of May and the 9th of November 1854, for the construction of the houses, to Jacob F. Kridler, as the architect, builder and owner, or reputed owner thereof.   But one claim was filed, and one writ of *scire facias* issued, against the two, the writ, however, specifying the amount claimed on each house.   On the return of the writ, the appellant appeared, claiming to be owner of one of the houses, and pleaded that the sum claimed was not due, that Kridler was not the owner, nor the agent of the owner, of the building or lot at the time the materials were furnished, or when the lien claim was filed or the writ issued, that the contract for furnishing the materials was made with an architect, builder and other person than the owner, and the plaintiffs did not give notice of their intention to claim the benefit of the lien as required in such case by the Act of Assembly, and that no sufficient claim of lien was made and filed within the time required by law.   The case was tried upon issues joined on these pleas.

*Exception.*   It was proved, among other matters, that, on the 18th of Sept. 1854, Kridler gave to the plaintiffs his note for $824.57, at four months, in settlement of his account with them, and embracing all the items in the lien claim up to the date of the note; that for several years prior to the time set forth in the lien account, he had been dealing largely with the plaintiffs, and was in high credit with them, and they would have furnished him without security, on his personal credit, any

reasonable quantity of lumber, and had, in fact, loaned him money from time to time without security; that he had been for a number of years one of the largest builders in the city of Baltimore, and had built most of the houses in that part of the city where the one in controversy is situated; that he enjoyed excellent credit down to the close of November 1854, when he absconded to parts unknown, having previously committed several forgeries upon persons in the city of Baltimore; and that it was the customary mode of dealing and settlement between the plaintiffs and Kridler, for the latter to give them his note at four months, at the beginning of January and July in each year, for all the lumber furnished by the plaintiffs to him during the preceding six months.

It is not necessary to state the other proof, or the questions raised in the case, by the several prayers offered by the defendant. His *eighth* prayer denied the right of the plaintiffs to recover in this proceeding any of the items of their lien claim which were included in the note of the 18th of September 1854, provided the jury find that on that day the plaintiffs had a settlement with Kridler for lumber theretofore furnished by them to him, and then agreed to give, and did give him a credit of four months for the amount then due therefor, and agreed to receive, and did receive from him, his promissory note to their order, for this amount, at four months from the 18th of September 1854, and give him their receipt therefor, offered in evidence.

The court (Lee, J.) rejected this prayer, and to this ruling the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before Eccleston, Tuck and Bartol, J.

*S. Teackle Wallis*, for the appellant:

If the lien existed, it would seem too clear for argument that the right to issue a *scire facias* for the enforcement of it was suspended by the settlement of the 18th of September until

the expiration of the credit then agreed on, and the maturity of the note then given. The taking of a promissory note for an open account, even without an express agreement, suspends the right to sue until the maturity of the note. 2 *G. & J.*, 493, *Glenn vs. Smith.* 2 *Gill*, 462, *Phelan & Bogue vs. Crosby.* 1 *Md. Rep.*, 115, *Mudd vs. Harper.* *Ibid.*, 514, *Hunter vs. Van Bomhorst.* A *fortiori*, when there is an express agreement for a credit, as is the hypothesis of the eighth prayer, is the right to sue suspended until the credit agreed on has expired. The 5th sec. of the Act of 1845, ch. 287, expressly enacts that the effect of granting a credit or receiving notes "shall be to prevent the issuing of a *scire facias* or other proceedings to enforce the said lien until the expiration of the credit agreed upon." The credit of four months agreed upon at that settlement did not expire until the 21st of January 1855, and this writ issued a month before that time, and of course was premature. The eighth prayer ought, therefore, to have been granted. The fact of Kridler's having absconded can certainly make no difference. The appellant is still entitled to the stipulated credit. It suspends by Act of Assembly, under all circumstances and in favor of all parties interested, the right to issue the *scire facias.* Nor is there any proof that this credit was fraudulently obtained, if that could avail the appellees. The settlement was made in accordance with the usual and customary course of dealing between the appellees and Kridler, and there is no proof to show that he was not then acting *bona fide.* There are some of the items of this claim which are not embraced in this note, but the proof shows that, as for them also, the same *credit* was given, according to the course of dealing between the parties. The judgment must therefore be reversed without a *procedendo.*

*Oliver Miller,* for the appellees, argued that the eighth prayer was properly rejected:

1st. Because by the 5th sec. of the Act of 1845, ch. 287, the granting of a credit or receiving of a note applies to the

case where such credit is given and such note is received *bona fide*. If the party asking the credit, or giving the note, at the time designed to and actually did perpetrate a *fraud* upon the material-men, the latter are not bound, after discovery of such fraud, to await the expiration of the credit which they were thus fraudulently induced to give before they can proceed by *scire facias*. It is submitted there is evidence in this record from which a jury might properly infer that Kridler obtained this credit by fraud. It is proved that his customary dealing with the appellees was to give his notes on the 1st of *January* and *July*, in each year, for the lumber furnished during the preceding six months, yet here he gives the note in the middle of September, and runs away in November, having *previously* committed forgeries. From these facts a jury might infer that he never intended to pay the note when he gave it; that he expected then to be compelled within a short time to flee from justice, and was making preparations so to do; and gave this note in order that he might prevent the appellees from filing their lien claim, so that he could dispose of the property or raise money on it as if it was free from any such incumbrance.

2nd. Because the delay secured by this section is a benefit conferred only upon the party to whom the credit is given, or from whom the note is received, and does not enure to the benefit of any third party unconnected with the credit.

3rd. But the note given does not cover the items of the claim which were subsequent to the 18th of September, and although the judgment should be reversed on the refusal to grant the eighth prayer, yet a *procedendo* should be issued, in order to enable the appellees to recover under this writ for such items.

*Note.*—The argument on other points is omitted.

BARTOL, J., delivered the opinion of this court:

The *scire facias*, in this case, was issued on the 23rd of December 1854, for the purpose of enforcing a claim of the

appellees under the Mechanics' Lien Law of 1838, ch. 205, and its supplements. The claim was for lumber furnished to Jacob F. Kridler, at different periods, from the 10th of May to the 9th of November 1854. It appears from the record, that on the 18th of September 1854, Kridler gave to the appellees his note for $824.57, at four months, in settlement of his account to that date, and which included all the items in the lien account to the date of the note. If it were conceded that the appellees have a lien which might be enforced, it is clear that to the extent which their claim is covered by the note, the present writ of *scire facias* cannot be maintained, it having been issued prematurely.

The Act of 1845, ch. 287, sec. 5, after providing that a lien is not waived by granting a credit or receiving notes or other securities, unless the same be received as payment, or the lien be expressly waived; provides, "that the sole effect thereof shall be to prevent the issuing of a *scire facias* or other proceedings, to enforce the said lien, until the expiration of the credit agreed upon." Under this Act the appellees could not proceed till after the maturity of the note which was not till the 21st of January 1855. In answer to this view two grounds have been urged on the part of the appellees.

"1st. That the granting of credit, or receiving a note, applies to the case when such credit is given, and such note is received *bona fide;*" in this case it is alleged the credit was obtained fraudulently.

"2nd. That the delay, secured by the Act of Assembly, is a benefit conferred only upon the party to whom the credit is given, or from whom the note is received, and does not enure to the benefit of any third party unconnected with the credit."

The record furnishes no evidence, whatever, that any fraud was perpetrated, or intended, by Kridler in the settlement made on the 18th of September. It is proved that about the last of November following, he absconded from the city of Baltimore; but it nowhere appears that he contemplated such

a step two months before; or that any of the causes then existed, which afterwards induced him to run away and fly from justice. There is no evidence to impeach the *bona fides* of the settlement of the 18th of September; it was made in conformity with his long established course of dealing with the appellees. Nor is there any force in the other ground taken by the appellees; the words of the Act expressly deny to the lienor, his remedy by *scire facias*, till the expiration of the credit, and there is no reason why the defence should not be as available to any one whose property is sought to be charged, as to the party with whom the contract is made. If materials be furnished to a builder, or contractor on a credit, it could not be pretended that the claim could be enforced by *scire facias* against the property of the owner, before the credit had expired. In the judgment of this court the eighth prayer of the appellant ought to have been granted, which upon the facts therein stated, denied to the appellees the right to recover in this proceeding, any of the items in their lien claim filed, which were included in the note and receipt given in evidence.

The account exhibited by the appellees contains some charges, for lumber furnished after the 18th of September, which are not included in the note; but as to them a similar objection is presented. The evidence shows that according to the usual and customary course of dealing between Kridler and the appellees, he was entitled to a credit thereon, till the 1st of January ensuing. See *Salmon Falls Manufacturing Co. vs. Goddard,* 14 *Howard,* 456.

It seems to us, therefore, that as to the items of claim involved in this appeal, not included in the note, the action was prematurely brought. This point was not distinctly presented in the trial below, but it has been suggested in the argument in this court, and it is apparent from the record that it would be fatal to any recovery by the appellees in this case upon *procedendo,* even if, in other respects, the claim were free from objection. Upon this state of the record, it is the duty of this court to reverse the judgment below without

*procedendo*, leaving to the appellees to assert their claim by future proceedings, if they shall be so advised.

Upon the other questions presented by the bill of exceptions, and argued at the bar, it is unnecessary to express any opinion.

*Judgment reversed without procedendo.*

(Decided June 13th, 1860.)